Opinion issued June 18, 2009














In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00109-CV

____________


RAPID SETTLEMENTS, LTD., Appellant


V.


JERRY GREEN, TRANSAMERICA OCCIDENTAL LIFE INSURANCE
COMPANY, AND TRANSAMERICA ANNUITY SERVICE
CORPORATION, Appellees






On Appeal from County Civil Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 892,591








O P I N I O N

 Appellant, Rapid Settlements, Ltd. (Rapid), appeals the trial court's grant of
summary judgment in favor of appellees, Jerry Green (Green), Transamerica
Occidental Life Insurance Company, and Transamerica Annuity Service Corporation
(collectively, Transamerica), thereby vacating an arbitrator's award in favor of Rapid. 
In three issues, Rapid asserts the trial court erred by failing to confirm the arbitrator's
award, finding the arbitrator's award constituted a transfer under the Structured
Settlement Protection Act (SSPA), and awarding Transamerica attorney's fees. 
Because the arbitrator's award does constitute a transfer under the SSPA, making the
SSPA applicable to this case, we conclude the trial court did not err by vacating the
arbitrator's award and awarding Transamerica its attorney's fees. We affirm. 

Background

 In 1988, Green, a Florida resident, settled his personal injury suit. The
settlement entitled Green to a series of monthly structured settlement payments. 
Transamerica was the annuity issuer and obligor for these payments.

 Rapid entered into a Transfer Agreement with Green in 2006. Under the terms
of the Transfer Agreement, Rapid agreed to pay Green a lump sum of $13,000. Green
agreed to transfer to Rapid 180 of his future structured settlement payments of $485
each. The Transfer Agreement stated that the transfer was subject to court approval. 
It also contained a number of representations and warranties, including a
representation from Green that the payments to be assigned were unencumbered. The
Transfer Agreement specified that disputes arising under the Transfer Agreement were
to be resolved through binding arbitration.

 Through its own research, Rapid discovered that Green had already conveyed
a number of payments that Green proposed to transfer to Rapid, and those payments
were subject to a 2005 order of garnishment entered by a Philadelphia court. Alleging
Green misrepresented his rights in the contract, Rapid filed a demand for arbitration. 
Though Transamerica received notice of the arbitration, Transamerica was not named
as a party. Because Transamerica had not signed an agreement to arbitrate,
Transamerica declined to participate in the proceedings.

 The arbitrator issued an "agreed award," which stated in part:

Green breached the foregoing agreement with Rapid. The parties herein
have agreed to settle their dispute upon the following terms and
conditions with Green having two alternatives over the next two weeks:


Alternative I: Green shall pay to Rapid the amount of $10,000 cash on
or before May 1, 2007. After such date, this option on Green's part shall
no longer be available to him; or at Green's choice; or


Alternative II: (i) Rapid shall pay to a third party the amount of
$9,700.00 on Green's behalf to clear title to the Garnished Payments (as
defined below); (ii) Green shall pay to Rapid the amount of $35,146.00
("Damages"); and (iii) Rapid shall pay to Green the amount of $9000 in
cash, reduced if necessary by additional monies due to clear title to
Green's payments. The net amount of $26,146.00 due to Rapid shall be
paid to Rapid with the following payments otherwise due to Green under
the Annuity Contract No. 882576, which are hereby garnished and
transferred to Rapid's assignee, which constitutes the financial
equivalent (time value adjusted) of the Damages:

 Two Hundred Seventy-Five (275) guaranteed and not life
contingent monthly payments each in the amount of $485.00 beginning
on July 28, 2008 through and including May 28, 2031 (hereinafter the
"Garnished Payments") . . . .

 . . . . 

 It is further

 . . . .

 ORDERED that the Annuity Owner and Annuity Issuer shall
change the designated beneficiary under the annuity for the Garnished
Payments to RSL Special-IV, Ltd. and no person or entity other than
Rapid or Assignee shall have the authority, upon written notification to
the Annuity Owner and Annuity Issuer, to change the beneficiary for the
Garnished Payments.


Rapid filed a petition to confirm the arbitrator's award.

 In response to the motion to confirm, Transamerica filed a petition in
intervention, opposing confirmation of the arbitrator's award, and requested that the
court vacate the award. Transamerica subsequently filed a motion for summary
judgment on its application to vacate the award, requesting attorney's fees. The trial
court granted Transamerica's motion, vacating the arbitrator's award. Rapid filed a
motion for new trial or for clarification, which the trial court denied. Transamerica's
claim for attorney's fees proceeded to a bench trial, and the trial court awarded
Transamerica $30,000 in attorney's fees.

SSPA

 Tort claimants with structured settlement agreements sometimes sell their future
payment rights to companies in exchange for a present lump sum. Symetra Life Ins.
Co. v. Rapid Settlements, Ltd., 599 F.Supp.2d 809, 814 (S.D. Tex. 2008). Texas, as
well as 42 other states, enacted the SSPA to protect unwary tort claimants from
potential abuse in their transactions with these companies. Id. at 814-15. In order to
accomplish this, the SSPA requires a court to approve a proposed transfer agreement
before a transfer of structured settlement rights to a factoring company occurs. See
Tex. Civ. Prac. & Rem. Code Ann. § 141.004 (Vernon 2005). The court must
expressly find that the transfer is in the payee's best interest, the payee has been
advised in writing to seek independent professional advice, and the transfer does not
conflict with any applicable statute or court order. See id. 

Applicability of FAA

 Because the parties disagree, we must address whether the Federal Arbitration
Act (FAA) or the Texas Arbitration Act (TAA) applies to this arbitration agreement. 
See 9 U.S.C.S. §§ 1-307 (LexisNexis 2008); Tex. Civ. Prac. & Rem. Code Ann. §
171.001-.098 (Vernon 2005).

 The FAA applies to all suits in state or federal court when the dispute concerns
a "contract evidencing a transaction involving commerce." Jack B. Anglin Co., Inc.
v. Tipps, 842 S.W.2d 266, 269-70 (Tex. 1992) (orig. proceeding). When there is no
express agreement to arbitrate under the FAA, a party may establish the applicability
of the FAA by showing that the transaction affects or involves interstate commerce. 
See Stewart Title Guar. Co. v. Mack, 945 S.W.2d 330, 333 (Tex. App.--Houston [1st
Dist.] 1997, writ dism'd w.o.j.). Under the FAA, "interstate commerce" is not limited
to the interstate shipment of goods, but includes all contracts "relating to" interstate
commerce. In re FirstMerit Bank, 52 S.W.3d 749, 754 (Tex. 2001) (orig.
proceeding). Interstate commerce may be shown in several ways, including: (1)
location of headquarters in another state; (2) transportation of materials across state
lines; (3) manufacture of parts in a different state; (4) billings prepared out of state; 
and (5) interstate mail and phone calls in support of a contract. See Tipps, 842
S.W.2d at 270; Mack, 945 S.W.2d at 333.

 In this case, the arbitration agreement does not expressly state whether the FAA
or TAA applies. However, the record establishes that the proposed transaction
between Green and Rapid Settlements involved interstate commerce: Green is a
Florida resident who contracted with Rapid Settlements, a Texas corporation. See In
re People's Choice Home Loan, Inc., 225 S.W.3d 35, 40-41 (Tex. App.--El Paso
2005, no pet.). We hold the FAA applies because the contract involves interstate
commerce.

Preemption

 In its second issue, Rapid Settlements asserts the FAA preempts the SSPA.

 "[S]tate law is naturally preempted to the extent of any conflict with a federal
statute." Crosby v. Nat. Foreign Trade Coun., 530 U.S. 363, 372, 120 S. Ct. 2288,
2294 (2000). Rapid Settlements cites Preston v. Ferrer, 128 S. Ct. 978 (2008),
Circuit City Stores Inc. v. Adams, 532 U.S. 105, 121 S. Ct. 1302 (2001), Southland
Corp. v. Keating, 465 U.S. 1, 104 S. Ct. 852 (1984), and In re David's Supermarkets,
Inc., 43 S.W.3d 94 (Tex. App.--Waco 2001, no pet.), contending that these cases
"put to rest" "the question of conflict or violation of an arbitration decision with state
law." However, these cases concern state laws that expressly or directly interfere
with a party's voluntary decision to arbitrate under the FAA. In contrast, the SSPA
in no way prohibits or limits arbitration between parties. See Symetra, 599 F.Supp.2d
at 827-28; Symetra Nat. Life Ins. Co. v. Rapid Settlements, Ltd., No. 14-07-00880-CV, 2009 WL 1057339, at *4-5 (Tex. App.--Houston [14th Dist.] Apr. 21, 2009, no
pet. h.) (mem. op.); Rapid Settlements, Ltd. v. Symetra Life Ins. Co., 234 S.W.3d 788,
797 (Tex. App.--Tyler 2007, no pet.); In re Rapid Settlements, 202 S.W.3d 456, 460
(Tex. App.--Beaumont 2006, pet. denied). "Nothing in the [SSPA] prohibits parties
from including an arbitration provision in the transfer agreement. . . . Section 141.004
of the SSPA requires prior court approval of the transfer agreement, not the
arbitration clause, and is therefore not pre-empted by the FAA." Rapid Settlements,
202 S.W.3d at 460 (citing Tex. Civ. Prac. & Rem. Code Ann. § 141.004. We hold
the FAA does not preempt the SSPA.

No Agreement to Arbitrate

 In its first issue, Rapid asserts the trial court erred in vacating the arbitrator's
award because Transamerica did not establish one of the exclusive grounds to vacate
an arbitrator's award under the FAA. See 9 U.S.C.S. § 10. Transamerica responds
that the arbitrator exceeded his authority by purporting to bind Transamerica. 
Transamerica explains that it never agreed to arbitrate its disputes with Rapid and
therefore cannot be bound by the arbitrator's order.

 The court of appeals reviews de novo a trial court's decision to confirm or
vacate an arbitration award under the FAA. Myer v. Americo Life, Inc., 232 S.W.3d
401, 407 (Tex. App.--Dallas 2007, no pet.). A district court may vacate an award
under the FAA only if (1) the award was procured by fraud, corruption, or undue
means; (2) there was evidence of partiality or corruption among the arbitrators; (3)
the arbitrators were guilty of misconduct that prejudiced the rights of a party; or (4)
the arbitrators exceeded their powers. 9 U.S.C.S. § 10(a). Transamerica invokes the
fourth ground for vacatur, asserting the arbitrator had no authority to bind
Transamerica because the arbitrator lacked jurisdiction over Transamerica.

 "It goes without saying that a contract cannot bind a nonparty." EEOC v.
Waffle House, Inc., 534 U.S. 279, 294, 122 S. Ct. 754, 764 (2002). "[A] duty to
arbitrate can arise only by agreement." United Steel, Paper & Forestry, Rubber,
Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. TriMas Corp., 531 F.3d
531, 535 (7th Cir. 2008) (citing United Steelworkers of Am. v. Warrior & Gulf, 363
U.S. 574, 582, 80 S. Ct. 1347, 1352 (1960)).

 "[A] gateway dispute about whether the parties are bound by a given arbitration
clause raises a 'question of arbitrability' for a court to decide." Howsam v. Dean
Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S. Ct. 588, 592 (2002); see also AT&T
Techs., Inc. v. Communc'ns Workers of Am., 475 U.S. 643, 649, 106 S. Ct. 1415,
1418 (1986); TriMas Corp., 531 F.3d at 535; Will-Drill Res., Inc. v. Samson Res. Co.,
352 F.3d 211, 219 (5th Cir. 2003) (holding that "where a party attacks the very
existence of an agreement, as opposed to its continued validity or enforcement, the
courts must first resolve that dispute"). Under the FAA, state law governs the
question of whether a litigant has agreed to arbitrate. First Options of Chicago, Inc.
v. Kaplan, 514 U.S. 938, 944-45, 115 S. Ct. 1920, 1924 (1995); In re Weekley
Homes, L.P., 180 S.W.3d 127, 130-31 (Tex. 2005).

 It is undisputed that Transamerica did not agree to arbitrate with Rapid and
Green. We must therefore consider whether Transamerica might be bound as a
nonsignatory. According to principles of contract and agency law, arbitration
agreements may bind nonsignatories under any of six theories: (1) incorporation by
reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6)
third party beneficiary. See In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 739
(Tex. 2005). Transamerica does not fall into any of those six categories, and Rapid
does not contend it does. We therefore conclude Transamerica was not bound to
arbitrate.

 Rapid implies that whether Transamerica agreed to arbitrate is irrelevant
because Transamerica has no cognizable interest in the arbitration. However, the
SSPA itself defines Transamerica as an "interested party." See Transamerica
Occidental Life Ins. Co. v. Rapid Settlements Ltd., No. 01-07-00137-CV, 2008 WL
5263265, at *5 (Tex. App.--Houston [1st Dist.] Dec. 18, 2008, no pet.) (mem. op.) 
(citing Tex. Civ. Prac. & Rem. Code Ann. §§ 141.002(7), .006). Two additional
considerations support Transamerica's status as an interested party:

First, the SSPA provides that no structured settlement obligor or annuity
issuer . . . can be required . . . to make any payment to any transferee
absent court approval of the transfer. This provision gives [the obligor]
an interest sufficient to contest any attempt to force it to make payments,
in the absence of court approval, to anyone other than the original payee. 
Second, if [the obligor] were to make payments to the wrong payee, it
could become subject to double liability. This potential liability gives
[the obligor] a justiciable interest in any attempt to transfer the right to
receive structured payments absent court approval.


Transamerica, 2008 WL 5263265, at *5 (internal citations omitted). Because the
SSPA acknowledges Transamerica as an interested party, and because the arbitrator's
award could potentially subject Transamerica to double liability, Transamerica does
have an interest in the outcome of the arbitration proceedings.

 Transamerica was not bound to arbitrate, yet the arbitrator's award purports to
bind Transamerica by ordering it to redirect structured settlement payments. We
conclude the arbitrator exceeded his authority in issuing the award. See 9 U.S.C.S.
§ 10(a)(4). We hold the trial court did not err by vacating the arbitrator's award
because the arbitrator exceeded his powers in issuing an award against a party not
subject to arbitration. See id. § 10. We overrule Rapid's first issue.

Meaning of "Transfer" Under SSPA

 In its second issue, Rapid asserts the arbitrator's award is not a "transfer"
under the SSPA. Rapid instead characterizes the garnishment of Green's structured
settlement payments as damages for breach of contract, which does not require court
approval under the SSPA.

 The SSPA defines "transfer" as "any sale, assignment, pledge, hypothecation,
or other alienation or encumbrance of structured settlement payment rights made by
a payee for consideration." Tex. Civ. Prac. & Rem. Code Ann. § 141.002(18). 
Based on this definition, Rapid asserts that a transfer must be voluntary, whereas the
transfer of structured settlement payments in this case was involuntary because the
arbitrator awarded the payments as damages. However, Green did voluntarily agree
to sell his structured settlement payments for consideration. By signing the
arbitrator's award, Green agreed to garnishment of 275 structured settlement
payments in exchange for $9000 in cash. See Symetra, 2009 WL 1057339, at *4
(citing Harris v. Balderas, 27 S.W.3d 71, 80 (Tex. App.--San Antonio 2000, pet.
denied) (holding consideration is fundamental element of settlement agreement)). 
"The fact that Rapid has obtained such a transfer by an arbitration award purporting
to award 'lost profits' or 'damages' for a breach of the agreement does not change the
fact that it is a transfer under the [SSPA]." Symetra, 599 F.Supp.2d at 830; see also
Symetra, 2009 WL 1057339, at *4; Rapid Settlements, 234 S.W.3d at 800-01. 

 We hold the arbitrator's award did constitute a transfer under the SSPA. We
overrule Rapid's second issue. 

Attorney's Fees

 In its third issue, Rapid contends the trial court erred by awarding attorney's
fees to Transamerica pursuant to section 141.005 of the SSPA.

 Section 141.005 of the SSPA states:

Following a transfer of structured settlement payment rights under this
chapter:

 . . . .

 (2) the transferee shall be liable to the structured settlement
obligor and the annuity issuer:

 . . . .

 (B) for any other liabilities or costs, including
reasonable costs and attorney's fees, . . . arising as a
consequence of the transferee's failure to comply
with this chapter . . . .


Tex. Civ. Prac. & Rem. Code Ann. § 141.005. Rapid asserts Transamerica cannot
recover attorney's fees under this section because there has not been a "transfer of
structured settlement payment rights." See id. We have already held that the
arbitrator's award did constitute a transfer under the SSPA. We therefore hold the
trial court did not err by awarding Transamerica its attorney's fees. We overrule
Rapid's third issue.







Conclusion

 We affirm the judgment of the trial court. 




 Elsa Alcala

 Justice


Panel consists of Justices Jennings, Alcala, and Higley.