Criminal Case Template












COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS





IN RE: JOBE CONCRETE
PRODUCTS, INC.,


 Relator
§


§


§


§


§



No. 08-02-00175-CV


AN ORIGINAL PROCEEDING


IN MANDAMUS


MEMORANDUM OPINION


 Relator, Jobe Concrete Products ("Jobe"), asks this Court to issue a writ of mandamus
against Respondent, the Honorable Guadalupe Rivera, Judge of the 168th Judicial District
Court of El Paso County. For the reasons stated, we deny the writ.

I. SUMMARY OF THE EVIDENCE


 Real Party in Interest, Juan David Maldonado, is an employee of Jobe, a non-subscriber under the Texas Workers' Compensation Act. Maldonado was injured while in
the course and scope of his employment. He sued Jobe for negligence. Jobe moved to
compel arbitration based on a written agreement signed by Maldonado. Maldonado denied
that he agreed to arbitration and argued that the "arbitration agreement" was unconscionable
and unenforceable. After a hearing, the trial court denied Jobe's motion to compel
arbitration, finding there was no valid agreement to arbitrate between the parties. This
original proceeding in mandamus follows.

II. DISCUSSION


 Jobe asserts that the trial court clearly abused its discretion by refusing to order
arbitration on Maldonado's claims. We begin with a discussion of the standard of review.

A. Standard of Review

Mandamus will lie only to correct a clear abuse of discretion. Walker v. Packer, 827 S.W.2d
833, 840 (Tex. 1992)(orig. proceeding). Moreover, there must be no other adequate remedy
at law. Id. An appellate court rarely interferes with a trial court's exercise of discretion. A
clear abuse of discretion warranting correction by mandamus occurs when a court issues a
decision which is without basis or guiding principles of law. Johnson v. Fourth Court of
Appeals, 700 S.W.2d 916, 917 (Tex. 1985)(orig. proceeding). 

 Mandamus is the proper means for reviewing an order denying arbitration under the
Federal Arbitration Act. Cantella & Co. v. Goodwin, 924 S.W.2d 943, 945 (Tex. 1996) (orig.
proceeding). Federal and State law strongly favor arbitration. Cantella, 924 S.W.2d at 944.
A presumption exists in favor of agreements to arbitrate under the FAA. Prudential Sec.,
Inc. v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995). Courts must resolve any doubts about
an agreement to arbitrate in favor of arbitration. Cantella, 924 S.W.2d at 944; Marshall, 909
S.W.2d at 899. Once a party seeking to compel arbitration establishes that an agreement
exists under the FAA, and that the claims raised are within the scope of the agreement, a trial
court has no discretion but to compel arbitration and stay its proceedings pending arbitration.
Cantella, 924 S.W.2d at 944.

 Arbitration is a creature of contract, and a clause requiring arbitration will be
interpreted under contract principles. Belmont Constructors, Inc. v. Lyondell Petrochemical
Co.,896 S.W.2d 352, 357 (Tex. App.--Houston [1st Dist.] 1995, no writ). A party seeking
to compel arbitration must establish its right to that remedy under the contract. Id. A clause
requiring arbitration is interpreted under contract principles, and the language contained
within will be enforced according to its plain meaning unless this would defeat the intention
of the parties. Pepe Int'l Dev. Co. v. Pub Brewing Co., 915 S.W.2d 925, 930 (Tex. App.--Houston [1st Dist.] 1996, no writ). The parties' agreement and intent to submit to arbitration
must be unambiguous. Porter & Clements, L.L.P. v. Stone, 935 S.W.2d 217, 220 (Tex. App.--Houston [1st Dist.] 1997, orig. proceeding). Construction of an unambiguous contract is a
question of law. See MCI Telecommunications Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d
647, 650-51 (Tex. 1999).

 In support of its Motion to Compel Arbitration, Jobe provided its Occupational Injury
Plan Summary Plan Description ("the Plan") and Maldonado's signed Receipt and
Arbitration Acknowledgment form ("the Acknowledgment"). The Plan specifies that an
employee waives any right to a jury trial on claims covered under the Plan by signing the
Acknowledgment and/or by remaining employed by Jobe after the effective date. The Plan
further provides that an employee's signature on the Acknowledgment is not necessary in
order for Jobe's policy to be effective. The Plan states that any actual payment of benefits
under the Plan will serve as further consideration for the arbitration policy. Finally, the Plan
provides that even if an employee fails to sign the Acknowledgment, refuses benefits, or
voluntarily or involuntarily terminates the employment with Jobe, the arbitration policy will
remain in effect. 

 In addition, Hector Paquian, Jobe's Risk Manager, testified that employees are given
a copy of the Plan and the Acknowledgment in English or Spanish, but he did not know
whether Maldonado was given copies in Spanish. He admitted that Jobe had not
countersigned the Acknowledgment. However, Paquian noted that under the wording of the
Plan, an employee's signature on the Acknowledgment is not necessary in order for Jobe's
policy to be effective. Paquian admitted that the required notice seeking arbitration was
never sent to the American Arbitration Association. The Plan provides that if notice is not
given, the claim shall be void and deemed waived. 

 Maldonado can not read or write English and has a ninth grade education from
Mexico. He admitted that he signed the Acknowledgment, but stated that he could not read
it and did not understand it. Maldonado testified that a secretary filled out his employment
application for him because he could not read it. She did not translate any of the documents
for him and he testified that he did not understand them very well. After Maldonado began
working for Jobe, he was called to the human services office to sign a document. He was
asked to sign the Acknowledgment, even though he stated that he did not understand it and
it was not translated for or explained to him. Maldonado believed the Acknowledgment was
part of the employment application. 

 After his accident, Maldonado was asked by Paquian to fill out an accident report
form. Attached to the form was another Acknowledgment document and both forms were
in English. Maldonado filled out the accident report form but asked if someone could
explain the Acknowledgment to him. Maldonado took the Acknowledgment home and his
wife attempted to translate it for him. He testified that he did not understand it very well and
took it to his attorney for help. After it was explained to him by his attorney, he told Paquian
that he was not going to sign the Acknowledgment. Maldonado also testified that he never
received a copy of the Plan and that no one talked to him about the arbitration policy. 

 The trial court denied the Motion to Compel Arbitration finding that there was no
valid agreement to arbitrate between the parties. In order for there to be a valid agreement
under Texas law, there must be 1) an offer; 2) an acceptance in strict compliance with the
terms of the offer; 3) a meeting of the minds; 4) each party's consent to the terms; and 5)
execution and delivery of the contract with the intent that it be mutual and binding. 
McCulley Fine Arts Gallery, Inc. v. "X" Partners, 860 S.W.2d 473, 477 (Tex. App.--El Paso
1993, no writ). The existence of a valid agreement is determined by the substantive contract
law of Texas. Tenet Healthcare, Ltd. v. Cooper, 960 S.W.2d 386, 388 (Tex. App.--Houston
[14th Dist.] 1998, writ dism'd w.o.j.). Consideration is a fundamental element of any
binding contract. Copeland v. Alsobrook, 3 S.W.3d 598, 604 (Tex. App.--San Antonio 1999,
pet. denied). Mutual promises to give up the right to litigate can constitute consideration
supporting an agreement to arbitration. In re Jebbia, 26 S.W.3d 757, 758 (Tex. App.--Houston [14th Dist.] 2000, orig. proceeding). In this case the arbitration agreement provided
as follows:

As part of adopting this Plan, the Employer has adopted this company
policy requiring that all claims or disputes described below that
cannot otherwise be resolved between the Employer and me are
subject to binding arbitration. This binding arbitration is the only
remedy for resolving any such unresolved claim or dispute, and
becomes effective on the Effective Date specified in the attached
Adoption Agreement.

. . .


This policy for resolving claims by arbitration is legally binding upon
the Employer and all Texas employees, including you. The Employer
(in adopting this plan) and you (in signing a "Receipt and
Acknowledgment" form and/or by remaining in the employ of the
Employer after the Effective Date) understand and agree that both are
waiving any right to a jury trial on claims covered by this policy. 
Your signature to a "Receipt and Arbitration Acknowledgment" form
is not necessary for this company policy to be effective. Adequate
consideration for this arbitration policy is represented by, among other
things, your eligibility for benefits under this Plan and employment
after the Effective Date. Any actual payment of benefits under this
Plan to or with respect to you will serve as further consideration for
and represent your further agreement to the provisions of this policy.
The Employer is obligated to pay benefits under and in accordance
with the terms of this Plan, and this arbitration policy will remain in
effect with respect to the Employer and you even if you fail or refuse
to sign a "Receipt and Arbitration Acknowledgment" form, you refuse
benefits under this Plan, or your employment with the Employer is
voluntarily or involuntarily terminated (this Plan and arbitration policy
in no way changes your "at will" employment status). 


 The Relator expressly agreed that, in exchange for the employee's acquiescence to
arbitrate, it would submit all claims covered by the policy to arbitration. However, the
Relator retained the right to amend, modify, or terminate the plan at any time. The employee
does not have any right to amend or modify or alter the plan. Furthermore, the employee is
not in any position to challenge the employer's decision. The Plan provides that the
"Administrator has discretionary and final authority to interpret and implement the provisions
of the Plan, including, but not limited to, correcting any defect, reconciling any inconsistency
and supplying any omission, and making any and all determinations that may impact a
claim." As with the right to terminate, the employee has no right to challenge the decisions
of the Employer. Unlike in cases such as Jebbia, where the court found that the language of
the parties created a mutual promise to forego the right to a jury trial which could not be
unilaterally rescinded by either party; in the instant case the language of the agreement
created mutual promises by both to forego their right to a jury trial which could be terminated
or altered by the Employer with or without the consent of the employee. Jebbia, 26 S.W.3d
at 758; see also In re Alamo Lumber Co., 23 S.W.3d 577 (Tex. App.--San Antonio 2000,
orig. proceeding). For this reason, we hold that the arbitration agreement in this case is not
supported by consideration and, therefore, it is not a valid agreement. For the reasons stated 

above, this Court finds that the trial court did not clearly abuse its discretion in refusing to 

order arbitration and therefore we deny the writ. 

July 31, 2003



 
 RICHARD BARAJAS, Chief Justice



Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.